UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Laura Wanner,

Plaintiff,

v.                                                      Civ. No. 05-126 (JNE/SRN)
                                                        ORDER
Hartford Life and Accident
Insurance Company and American
Bankers Life Assurance Company,

Defendants.

---

George H. Smith, Esq., Trawick & Smith, P.A., appeared for Plaintiff Laura Wanner.

David W. Asp, Esq., Lockridge Grindal Nauen P.L.L.P., appeared for Defendant Hartford Life and Accident Insurance Company.

William A. McNab, Esq., Winthrop & Weinstine, P.A., appeared for Defendant American Bankers Life Assurance Company.

---

Laura Wanner brought this action against Hartford Life and Accident Insurance Company (Hartford) and American Bankers Life Assurance Company (ABLAC) (collectively, Defendants) to recover long-term disability (LTD) benefits under plans offered by her former employer, Northwest Airlines, pursuant to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001-1461 (2000). The case is before the Court on Defendants' motions for summary judgment and Wanner's motion for summary judgment. For the reasons set forth below, the Court grants ABLAC's motion and denies Hartford's and Wanner's motions.

## I.       BACKGROUND

Northwest Airlines sponsored an employee welfare benefit plan providing LTD insurance to certain eligible employee groups. Both Hartford and ABLAC insured the plan for certain employee groups. In 1988, Wanner began working for Northwest Airlines as a cleaner. In

1

August 1998, Wanner was injured on the job and began to experience lower back, neck, and shoulder pain.  The injury occurred when Wanner threw "8 bags over [her] shoulder to carry up jetway stairs."  At the time of the injury, Wanner was insured by a Hartford group insurance policy (Hartford Policy).[1]  Wanner ceased working in January 1999.  She applied for LTD benefits and Hartford approved her claim on or about February 29, 2000.

On or about February 9, 2000, Wanner returned to her former position as an airplane cleaner on a part-time basis.  She worked at this position until approximately May 29, 2000, when she began working as a receptionist for Northwest Airlines.  In a letter dated May 30, 2000, Hartford notified Wanner that because she had returned to work on a full-time basis, her file had been closed.  Hartford also advised her that "[i]f you have been unable to maintain full time work and remain disabled, please submit medical documentation to support your continued disability."  Hartford informed her that her file would remain in "closed status" until such documentation was received.  Wanner did not respond.

Wanner worked as a receptionist until November 16, 2000.  At that time, Wanner was insured by the ABLAC Group Disability Income Insurance Policy (ABLAC Policy).  On or about April 8, 2002, Wanner applied for LTD benefits from ABLAC.  In her application, Wanner stated that her symptoms first appeared on August 6, 1998, when she was working as a cleaner.  She explained that her injury occurred when she "threw 8 headset bags onto [her] left shoulder," after which she had instant pain in her neck, shoulder, and lower back.  She claimed she had been partially or totally disabled since November 16, 2000, and her attending physician described her disability as "low back pain, foraminal stenosis."  She also reported that she had

---

[1]     Both Hartford and Wanner refer to Group Policy No. GLT-24529.

been disabled and received Workers Compensation benefits from January 31, 1999, through November 7, 2001.

After reviewing Wanner's claim file, ABLAC determined that Wanner was covered under its policy as a receptionist and that her date of eligibility was May 29, 2000. ABLAC further determined that Wanner was not eligible for LTD benefits pursuant to its pre-existing condition exclusion. By letter dated January 14, 2003, to Wanner, ABLAC explained that Wanner became an eligible employee under the ABLAC plan on May 29, 2000,[2] the date its records indicated she became a receptionist. ABLAC also noted that it received medical records indicating she was treated for the "condition of lower back pain and Foraminal Stenosis on 4/6/00, 4/18/00, and 5/11/00." Therefore, ABLAC explained that, based on the pre-existing condition limitation in the plan and Wanner's date of loss, it determined her condition was pre-existing and that no benefits were payable for her claim. Finally, ABLAC informed Wanner of her right to appeal its decision within 180 days.

By letter dated August 4, 2003, Wanner's counsel sent ABLAC a "request for any and all appeals." Even though the appeal period had expired, ABLAC agreed to review Wanner's claim and appeal. Brian Libby, a Special Risk Analyst, reviewed the appeal and confirmed that the cleaner position Wanner resumed on a part-time basis on February 9, 2000, was not a covered position under the collective bargaining agreements. He also confirmed that Wanner's position as a receptionist was covered and that she became eligible on May 29, 2000. Libby also reviewed Wanner's medical records from February 29 through May 29, 2000. He determined that Wanner received medical treatment for her lower back condition during the three-month

---

[2]     ABLAC also explained that when Wanner returned to work as a part-time cleaner in February 2000, its policy did not cover her cleaner position.

period prior to May 29, 2000, and that she was therefore precluded by the policy's pre-existing condition limitation.  ABLAC denied Wanner's appeal.

The administrative record on which ABLAC based its decision to deny Wanner's claim reveals that the ABLAC Policy includes a pre-existing condition exclusion stating that "[ABLAC] will not pay benefits for any claim starting within 12 months of the effective date of the employees [sic] coverage which is due to a pre-existing condition."   A "pre-existing condition" means:

> within the 3 month period prior to the effective date of coverage, an injury, a sickness or physical condition for which medical advice or treatment was recommended or received.   Treatment means consultation, care or services provided by a physician including diagnostic measures and taking prescribed drugs or medicines.

The administrative record also reveals that Wanner had received treatment for her lower back pain and foraminal stenosis on April 4, April 18, and May 11, 2000.  Specifically, John A. Dowdle, M.D., noted that on April 4, 2000, he saw Wanner and that Wanner "has neck and shoulder pain that has been continuing since her injury"; on April 18, 2000, Wanner was seen for "follow-up of her back and also her neck"; and on May 11, 2000, Wanner returned for follow-up on her lower back pain.

Wanner also filed a second claim for LTD benefits with Hartford on or about August 29, 2002, again claiming that her back pain prevented her from performing her duties as a receptionist.  Hartford denied her claim, explaining that as a receptionist, Wanner was not within a class of eligible employees covered by Hartford.

## II.     DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as

to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, Rule 56(e) requires the party opposing the motion to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

A participant in an ERISA plan may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Typically, a court reviews a denial of benefits challenged under that section under a de novo standard of review. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). However, when a plan gives discretionary authority to the plan administrator or reviewing committee to determine eligibility for benefits or to construe the terms of the plan, a court reviews the decision to deny benefits for an abuse of discretion. *Id*.

## A.    Hartford

Hartford moves for summary judgment, arguing that Wanner's first claim for LTD benefits is barred by the statute of limitations and that her second claim for LTD benefits is not covered by the Hartford Policy. Wanner also moves for summary judgment. Because Hartford has not submitted any evidence demonstrating that the relevant plan gives discretionary authority

to the plan administrator to determine eligibility for benefits or to construe terms of the plan, its denial of Wanner's claims is subject to a de novo review.

    *1.*    *Wanner's first claim*

Hartford argues that Wanner's first LTD claim, which was approved in February 2000, is barred by a two-year statute of limitations period that applies to ERISA claims. Specifically, Hartford contends that its May 30, 2000 letter, informing Wanner that her file had been closed, constitutes the termination of her first claim for LTD benefits. Hartford further contends that Wanner failed to respond to, communicate any disagreement with, or file an administrative appeal of the letter. Thus, Hartford contends that Wanner's limitations period ran on May 30, 2002.

Wanner appears to argue that the May 30, 2000, letter was not an effective termination of her benefits and that it cannot bar additional claims. In addition, Wanner argues the Hartford Policy sets forth a three-year limitations period and that her claim is not time-barred. In support, Wanner relies on "Section 8 of the policy of insurance attached and made as exhibit 1." Section 8 of the Hartford Policy, however, has not been submitted to the Court and is, therefore, not part of the record. In fact, although both parties rely on purported language in the Hartford Policy, neither party submitted a copy of that policy until so requested by the Court. Thereafter, the parties jointly submitted a purported copy of the Hartford Policy (Group Policy No. GLT-24529). Upon review, the copy of the Hartford Policy submitted appears to be incomplete. In particular, there appear to be several pages and entire sections missing, including sections specifically relied on by the parties. Moreover, as discussed below, the Hartford Policy as submitted appears to differ in at least one material respect from the representations made by counsel. Because the Court does not have a complete record before it, and has reason to be

skeptical of the portions submitted, it declines to analyze the merits of the parties' arguments on the issue of the statute of limitations at this time.

    2.    *Wanner's second claim*

Hartford argues Wanner's second claim, which was filed in August 2002, was appropriately denied because, as a receptionist, Wanner was a member of "Northwest's clerical group" and not within a class of employees eligible for coverage. In support, Hartford directs the Court to a letter dated September 20, 2002, from Hartford to Wanner regarding her claim for LTD benefits. The letter explains that Wanner's claim for LTD benefits had been denied based on the language of the Hartford Policy. In particular, the letter indicates that the Hartford Policy covers mechanical and related personnel, flight kitchen personnel, and plant protection employees. The letter refers to, but does not attach the relevant portions of, the Hartford Policy.

Upon review of the Hartford Policy provided to the Court, it appears as though there was an amendment to the section entitled "Eligible Employees" in 1996. The language of the Hartford Policy amendment lists a broader class of Eligible Employees than Hartford presently contends is covered, including "clerical and agent employees." This language appears to be inconsistent with Hartford's contention that Wanner was not covered as a "clerical" employee while she was working as a receptionist. However, neither party has addressed the existence or relevance of this amendment.

Wanner also argues that she is covered under the Hartford Policy by virtue of a provision under "Article II" of the Hartford Policy that purports to deal with successive periods of disability. Hartford refers to the same policy language and argues that the provision does not apply to Wanner. Despite the fact that both parties refer to the same purported policy language, the section relied on does not appear to be part of the Hartford Policy submitted to the Court.

Again, because the Court does not have a complete record before it, it cannot analyze the merits of the parties' arguments as to the issue of Wanner's coverage under the Hartford Policy. Accordingly, the Court denies both Hartford's and Wanner's motions for summary judgment.

**B.    ABLAC**

ABLAC agues that the Court should review its denial of Wanner's benefits for an abuse of discretion because the ABLAC Policy specifically delegates to ABLAC the discretionary authority to decide appeals from the denial of benefits.   Specifically, the ABLAC Policy, as summarized in the Summary Plan Description, provides that Northwest is the Plan Administrator and that ABLAC is the Claims Administrator.[3]   Further, the ABLAC Plan provides that claims should be made to Northwest; if a claim is denied, a "request for review" can be filed, and ABLAC will make a decision on the request for review.   Wanner does not dispute that the ABLAC Policy grants ABLAC discretionary authority in making decisions on appeals regarding benefits or that the abuse of discretion standard is warranted.[4]   Consequently, the Court reviews ABLAC's decision for an abuse of discretion.[5]

---

[3]     The *Agreement between Northwest Airlines, Inc. and International Association of Machinists & Aerospace Workers* provides that Northwest will be the plan administrator of and will have fiduciary responsibilities under the LTD Income Plan.   It further provides that the "Company" will select the insurance carrier to administer its LTD plan.

[4]     Wanner does argue that in determining whether the administrator abused its discretion, the Court must determine whether there is an inherent conflict of interest.   To obtain a less deferential standard, Wanner "must present material, probative evidence demonstrating that (1) a palpable conflict of interest or a serious procedural irregularity existed, which (2) caused a serious breach of the plan administrator's fiduciary duty to her."   *Woo v. Deluxe Corp.*, 144 F.3d 1157, 1160 (8th Cir. 1998).   Wanner asserts there is a conflict here because ABLAC is the administrator.   Without more, Wanner's assertion is insufficient to trigger a less deferential standard.   *See Torres v. UNUM Life Ins. of Am.*, 405 F.3d 670, 679 (8th Cir. 2005) ("Torres presented no evidence that UNUM denied his claim because it was financially advantageous for it to do so."); *Davolt v. Executive Comm. of O'Reilly Auto.*, 206 F.3d 806, 809 (8th Cir. 2001) (explaining no automatic conflict of interest where the insurer of a benefits plan is also the plan administrator).   Accordingly, Wanner has not made the necessary demonstration to trigger a departure from the abuse of discretion standard.

Under the abuse-of-discretion standard, a court must uphold the administrator's decision if it was "reasonable" or supported by "substantial evidence." *McGee v. Reliance Standard Life Ins. Co.*, 360 F.3d 921, 924 (8th Cir. 2004). Substantial evidence is more than a scintilla but less than a preponderance. *Leonard v. Sw. Bell Corp. Disability Income Plan*, 341 F.3d 696, 701 (8th Cir. 2003). Based only on the evidence that was before the plan administrator at the time the decision was made, a court focuses on whether a "reasonable person *could* have reached a similar decision . . . not that a reasonable person *would* have reached that decision." *Phillips-Foster v. UNUM Life Ins. Co. of Am.*, 302 F.3d 785, 794 (8th Cir. 2002) (quotations omitted).

In this case, ABLAC denied Wanner's claim after concluding that she became eligible on May 29, 2000, and that she was precluded by the pre-existing condition exclusion. Following an initial review of Wanner's application for benefits, ABLAC explained:

> It is our understanding that you were out of work due to low back pain and Foraminal stenosis, and unable to perform your occupation as a cleaner from the period of 1/31/99 to 2/8/00. You returned to work on 2/9/00 and worked until 5/28/00 as a cleaner at which time you were disqualified from this position.
>
> Our records indicate that you received a position as a receptionist with Northwest Airlines as of 5/29/00. The IAMAW represents this position; therefore, based on the wording of the plan, you became an eligible employee under the [ABLAC] plan as of 5/29/00.
>
> Your plan states in part: [ABLAC] will not pay benefits for any claims starting within 12 months of the effective date of the employee's coverage, which is due to a pre-existing condition.
>
> The pre-existing condition [sic] of your plan states in part: Within the 3-month period prior to effective date of coverage, an injury, a sickness or physical condition for which medical advice or treatment was recommended or received. Treatment means consultation, care or services provided by a physician including diagnostic measures and taking prescribed drugs or medicine.

---

[5]    The Court notes, however, that it would reach the same result in this case under the de novo standard of review.

We subsequently received a claim with the date of loss of 11/16/00, indicating you were unable to perform your occupation as a receptionist. We conducted a pre-existing condition review of your claim for the period of 2/29/00 to 5/29/00.

We received medical records from Dr. John Dowdle with Summit Orthopedics for the period of 2/29/00 to 5/29/00, and determined based on this information you were treated for the condition of low back pain and Foraminal Stenosis on 4/6/00, 4/18/00, and 5/11/00. Therefore based on pre-existing condition limitation in the plan, and your date of loss, we determined that your condition is pre-existing and no benefits are payable for this claim.

On appeal, ABLAC reaffirmed the denial of benefits in a letter to Wanner's counsel. ABLAC explained that, according to the ABLAC Policy, employees who are absent from work due to disability on the effective date of the policy are not eligible for coverage until they return to work on a full-time basis. In addition, ABLAC explained that Wanner was not in active employment when the ABLAC Policy went into effect.[6] Instead, ABLAC explained that her effective date was deferred until May 29, 2000, the day she returned to work on a full-time basis and was in an eligible class. Further, ABLAC explained that because the date Wanner claimed her disability began was within twelve months of her effective date of coverage, the policy's pre-existing condition limitation required ABLAC to review the three-month period prior to her effective date of coverage. ABLAC explained that it investigated the time period from February 29, 2000, to May 29, 2000, and discovered Wanner received medical advice or treatment during the pre-existing condition period.

Wanner does not dispute that the ABLAC Policy includes a pre-existing condition provision.[7] Nor does she dispute she became covered on May 29, 2000. Instead, Wanner argues

---

[6]     The letter indicates that the ABLAC Policy was effective June 1, 1999.

[7]     Moreover, she does not dispute that the policy language provides that "[ABLAC] will not pay benefits for any claim starting within 12 months of the effective date of the employees [sic] coverage which is due to a pre-existing condition" and that a "pre-existing condition" includes

she is entitled to benefits under Section VI (Continuity of Coverage Upon Transfer of Insurance Carriers) of her Certificate of Insurance and because she had more than one disabling condition.

First, Wanner claims she is entitled to benefits on the basis of the following ABLAC Policy language:

(1)     Benefits may be payable for a disability due to a pre-existing condition for an employee who:

a.  was insured by the prior carrier at the time of transfer; and

b.  was in active employment and insured under this certificate on its effective date.

The administrative record reveals that the effective date of Wanner's Certificate of Insurance for the ABLAC Policy was August 1, 1999.[8]   Thus, under the plain language of this provision, Wanner was required to be in active employment and insured as of August 1, 1999.  The record demonstrates, however, that Wanner ceased working as a cleaner in January 1999 and did not return to active employment as a receptionist until May 29, 2000.[9]   Thus, Wanner is not entitled to benefits under this provision and ABLAC did not abuse its discretion in denying her claim.

Second, while Wanner stipulates she was treated for a low back condition within three months of May 29, 2000, she claims that this condition was not the sole cause of her disability. In particular, she claims that she also had a neck condition and diabetes and that ABLAC abused its discretion by not considering these conditions.  The Court rejects Wanner's argument.  In

---

"an injury, a sickness or physical condition for which medical advice or treatment was recommended or received" within three months prior to the effective date of coverage.

[8]      In a letter from ABLAC to Wanner's counsel dated September 24, 2003, ABLAC indicated that the ABLAC Policy was effective June 1, 1999.  This appears to conflict with the date on Wanner's Certificate of Insurance.  This apparent discrepancy is not material, however, because Wanner was not in active employment on either date.

[9]      The ABLAC Policy equates "active employment" with "full-time" status.

Wanner's application for benefits, her physician described her "Primary Diagnosis (including complications)" as "low back pain, foraminal stenosis."  He also noted spinal fusion surgery, anterior and posterior, performed on March 12, 2001.  In a section of the application concerning possible fundamental or marked changes in Wanner's condition, he noted "unknown p [sic] neck surgery."  Wanner's possible future neck condition, however, is not part of the doctor's primary diagnosis and he did not indicate that Wanner suffered from a disabling neck condition.  In addition, the physician did not refer to Wanner's diabetes as a disabling condition.  ABLAC explained to Wanner its reasons for its initial denial of benefits.  It also explained that it would consider any new evidence related to the claim and appeal.  Wanner did not claim that she had any additional disabling conditions.  Thus, the Court finds that ABLAC did not abuse its discretion by failing to consider these alleged bases for her LTD claim.[10]

In short, ABLAC's decision to deny Wanner's LTD benefits under the ABLAC Policy is supported by substantial evidence.  The Court therefore grants ABLAC's motion for summary judgment and denies Wanner's motion for summary judgment.

---

[10]     Even if Wanner had made a claim based on her neck condition, Wanner admits (and the record demonstrates) she was treated for neck difficulties in the three months prior to May 29, 2000.  Thus, her neck condition would also constitute a pre-existing condition and coverage would have been precluded by the express language of the ABLAC Policy.

## III.    ORDER

Based on the files, records, and proceedings herein, and for the reasons stated above, IT

IS ORDERED THAT:

1.    Hartford's Motion for Summary Judgment [Docket No. 17] is DENIED.

2.    ABLAC's Motion for Summary Judgment [Docket No. 22] is GRANTED.

3.    Wanner's Motion for Summary Judgment [Docket No. 29] is DENIED.

4.    The case is DISMISSED WITH PREJUDICE as to Defendant ABLAC.

Dated:  April  6, 2006

s/  Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge